UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AZENTA, INC.,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>STEPHANIE ANDREWS, et al.,<br><br>　　　　　　　　　Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No.: 22-cv-01952-JLS-JLB<br><br>**ORDER GRANTING IN PART DEFENDANT STEPHANIE ANDREWS' MOTION TO COMPEL FURTHER RESPONSE TO REQUEST FOR PRODUCTION NUMBER 38, SET ONE AND PRODUCTION OF DOCUMENTS**<br><br>**[ECF No. 37]** |

　　　　Before the Court is a Motion to Compel filed by Defendant Stephanie Andrews ("Andrews"), seeking to compel Plaintiff Azenta, Inc. ("Plaintiff") to provide further response and production of documents to Andrews' Request For Production ("RFP") No. 38, Set One. (ECF No. 37.) Plaintiff filed an opposition (ECF No. 46), to which Andrews replied (ECF No. 50). For the reasons stated below, Andrews' Motion to Compel (ECF No. 37) is **GRANTED in part**.

///

## I. BACKGROUND

### A. The Underlying Action

Plaintiff, a life science company, employed Andrews starting on or around October 1, 2015. (ECF Nos. 1 ("Compl.") ¶ 2; 12 at 29–37 ("Countercl.") ¶ 6.) By 2022, Andrews had been promoted to Senior Account Manager of Consumables and Instruments. "In this position, Andrews was responsible for securing sales of Consumables and Instruments on behalf of [Plaintiff] in Southern California, Arizona, Utah and Hawaii." (Countercl. ¶ 6.) As Senior Account Manager, Andrews alleges she "earned and was paid incentive awards on each sale of Consumables and Instruments that shipped to the geocodes, i.e. Zip Codes, within her sales area." (*Id.* ¶ 8.) Andrews further alleges these incentive awards were calculated and paid pursuant to Plaintiff's "Sales Incentive Plans and other writings, as well as the long-term course of dealings between the parties." (*Id.*) Andrews asserts that "[i]n January 2022[,] an order shipped to her sales area that should have resulted in an incentive award of approximately $27,000" under the Fiscal Year 2022 Sales Incentive Plan ("FY 2022 SIP").[1] (*Id.* ¶ 9.) However, Andrews alleges her manager told her Plaintiff

---

[1] The FY 2022 SIP reads in relevant part:

**Introduction**

Azenta seeks to reward all sales team members with performance incentive to achieve sales objectives. This document provides an overview of the FY2022 Sales Incentive Plan for all eligible Sales team members. The plan is effective for sales closed from October 1st, 2021 through September 30th, 2022. As with all incentive plans, management reserves the right to modify the plan at any time and evaluate any transaction on a case-by-case basis.

**Terms and Conditions**

1. This plan supersedes all prior sales compensation programs of the company and all other previous or written statements from all previous entities regarding the subjects contained herein unless amended in writing by Azenta ("the Company").

"had decided to treat the sale as a 'house account,' which meant Andrews would not receive the associated incentive award." (*Id.*) On April 1, 2022, Andrews tendered her resignation, and her last day of employment with Plaintiff was April 15, 2022. (Compl. ¶ 4.)

On December 9, 2022, Plaintiff filed its complaint alleging, *inter alia*, that Andrews violated the Defend Trade Secrets Act of 2016 by downloading and sending documents and emails containing proprietary and confidential information to her personal email address before resigning from Plaintiff's employ and joining Defendant LVL Technologies USA, Inc.—a direct competitor of Plaintiff. (Compl. ¶¶ 4–5.) On January 31, 2023, Andrews filed an answer that asserts four counterclaims against Plaintiff, alleging breach of contract, violations of the California Labor Code, violation of the California Business and Professions Code, and quantum meruit stemming from Plaintiff's alleged failure to pay Andrews the $27,000 incentive award she asserts she is entitled to. (Countercl. ¶¶ 13–34.)

In its answer to the counterclaims, Plaintiff "denies that [Andrews] was entitled to incentive awards on any Azenta products sold by any salesperson which happened to be shipped to a buyer in [Andrews'] sales region." (ECF No. 23 at 3.) Instead, Plaintiff asserts the FY 2022 SIP provided that Andrews was "eligible to earn quarterly incentives . . . based specifically on her year-to-date performance for sales she made in her territory."[2] (*Id.*) Finally, Plaintiff "denies that any of [Andrews'] sales made in January 2022, or any other

---

2. Quarterly incentive payouts are made based on a sales team member's YTD performance against their YTD goal and paid up to their YTD target incentive. All above-goal performance in Q1–Q3 will be paid as a true-up with Q4 payment based on total year performance against total year goal. The maximum payment for Q1–Q3 combined is 100% of incentive. Everything over the 100% mark will be paid in the Q4 True-up.

(ECF No. 12 at 39–40 (graphs and charts omitted).)

[2] Plaintiff notes that its fiscal year begins October 1, with the first three quarters being "Q1" (October–December), "Q2" (January–March) and "Q3" (April–June). (ECF No. 46 at 2 n.1, 4.)

time during her employment, entitled her to an incentive award of approximately $27,000." (*Id.*)

### B. The Instant Motion

On April 4, 2023, Andrews propounded RFP No. 38, Set One, to Plaintiff. (ECF Nos. 37-1 at 1–2 ("Folan Decl.") ¶ 2; 37-1 at 4–10 ("Mot. Ex. A").) Plaintiff responded on June 22, 2023. (Folan Decl. ¶ 2; ECF No. 37-1 at 11–15 ("Mot. Ex. B").) The request at issue and response thereto are as follows:

> **RFP No. 38**: All DOCUMENTS and COMMUNICATIONS evidencing, reflecting, or relating to any commissions or awards paid to any AZENTA employee other than ANDREWS based on or related to the shipping and invoicing of any product during the period from April 30, 2019[,] to April 15, 2022[,] to a buyer in ANDREWS' territory. (The identify [sic] of the employee(s) may be redacted so long as it is replaced with a numerical designation that allows them to be subsequently identified by AZENTA if needed.)
>
> **Response**: Plaintiff objects to this Request to the extent it seeks to violate the attorney-client privilege and/or the attorney work product doctrine. Plaintiff further objects that this Request is vague, overbroad, and not proportional to the needs of this case. Plaintiff further objects to the extent this Request seeks to invade third party privacy guaranteed by the United States and California Constitutions. Plaintiff additionally objects that this Request seeks information not reasonably calculated to lead to the discovery of admissible evidence.

(Mot. Ex. A at 9–10; Mot. Ex. B at 15.)

The parties met and conferred regarding Plaintiff's response and Andrews' request for supplementation. (Folan Decl. ¶ 3.) After requesting and receiving two extensions, the parties raised the discovery dispute with the Court on August 31, 2023. (*See* ECF Nos. 26; 27; 28; 30; 34.) The Court held an informal discovery conference on September 20, 2023 (ECF No. 35), after which a briefing schedule was issued (ECF No. 36). Andrews' timely motion seeking to compel further response and production of documents to RFP No. 38 followed. (ECF No. 37.)

///

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure authorize parties to obtain discovery of any nonprivileged information discoverable under Rule 26 if it is (1) relevant, and (2) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1), as amended in 2015, provides that parties—

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id*.

Evidence must be "relevant to any party's claim or defense" to fall within the scope of permissible discovery. *Id*. The 2015 amendment to Rule 26(b) deleted the phrase "reasonably calculated to lead to the discovery of admissible evidence" because it was often misconstrued to define the scope of discovery and had the potential to "swallow any other limitation." Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment; *see also San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 15CV1401-BEN-MDD, 2017 WL 3877732, at *1 (S.D. Cal. Sept. 5, 2017). The amendment replaced this phrase with the statement that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment.

Information must also be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*.

Pursuant to Federal Rule of Civil Procedure 34, a party may request the production of documents from another party within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). If a party fails to produce documents pursuant to Rule 34, the propounding party may bring a motion to compel. *See* Fed. R. Civ. P. 37(a). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." *Alves v. Riverside Cnty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021) (quoting *Bryant v. Ochoa*, No. 07-CV-00200-JM-PCL, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009)). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). "Once the propounding party establishes that the request seeks relevant information, '[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 283 (S.D. Cal. 2018) (quoting *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009)); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (noting those opposing discovery are "required to carry a heavy burden of showing why discovery [should be] denied").

## III.   DISCUSSION

Andrews argues that the requested documents are both relevant and proportional (ECF No. 37 at 5–6), while Plaintiff contends the request is overbroad based on the scope of Andrews' counterclaims, unduly burdensome, and irrelevant (ECF No. 46 at 4–6).[3]

---

[3]   The Court declines to address any objections raised in Plaintiff's discovery responses that it did not reassert within its opposition brief to the instant Motion. *See Hall v. Marriott Int'l, Inc.*, No. 19-cv-01715-JLS-AHG, 2021 WL 1906464, at *9 (S.D. Cal. May 12, 2021) (quoting *SolarCity Corp. v. Doria*, No. 16-cv-3085-JAH-RBB, 2018 WL 467898, at *3 (S.D. Cal. Jan. 18, 2018)) ("When ruling on a motion to compel, courts in this district 'generally consider[ ] only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel.'"); *Sherwin-Williams Co. v. Earl Scheib of Cal.*,

A.     Relevance

As a threshold matter, both parties agree that the FY 2022 SIP governs Andrews' incentives for the period relevant to her counterclaims. (*Compare* ECF Nos. 37 at 4, 50 at 2–3 *with* ECF No. 46 at 5–6.) The parties dispute how the contract should be interpreted— namely whether the provisions should be interpreted with the benefit of extrinsic evidence of the parties' prior dealings. Andrews' counterclaim and Motion both assert a theory of contract interpretation based on both the written FY 2022 SIP and the parties' course of dealings. (*See* Countercl. ¶¶ 8, 14, 30; ECF Nos. 37 at 4, 5; 37-2 ¶ 2; 50 at 2, 4–5.) In its opposition, Plaintiff repeatedly cites to the FY 2022 SIP provisions, arguing that the express contract terms overcome Andrews' course of dealing such that Andrews' request is irrelevant. (ECF No. 46 at 5–6.)

"Under California law, the fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002) (citing Cal. Civ. Code § 1636). "When a contract is reduced to writing, this intent 'is to be ascertained from the writing alone, if possible.'" *Id.* (quoting Cal. Civ. Code § 1639). "Under California law, '[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.'" *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 989 (9th Circ. 2006) (quoting *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage &*

---

*Inc.*, No. 12-cv-2646-JAH-JMA, 2013 WL 12073836, at *2, n.1 (S.D. Cal. Mar. 4, 2013) (deeming all objections raised in response to the discovery requests but not addressed in the discovery motion to be moot or waived, and limiting its review to arguments presented in the parties' briefs). Additionally, the Court cautions Plaintiff against objecting on the ground that a discovery request "is not reasonably calculated to lead to the discovery of admissible evidence." (ECF Nos. 37-1 at 14, 15; 46 at 2.) It is time the phrase be retired from litigants' lexicon as it has been retired from Rule 26(b)(1) for nearly a decade.

*Rigging Co.*, 442 P.2d 641, 644 (Cal. 1968)). "Because California law recognizes that the words of a written instrument often lack a clear meaning apart from the context in which the words were written, courts may preliminarily consider any extrinsic evidence offered by the parties." *Miller,* 454 F.3d at 989–90. "The parties' 'prior course of dealings' is relevant in this regard." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1118 (9th Cir. 2018).

Here, Andrews' course of dealings theory is recognized under California law, making her request for documentation to support her theory relevant. Plaintiff's arguments go to the substantive issue of contract interpretation—an issue not presently before the Court—rather than to the relevance of the discovery request based on the claims alleged and defenses asserted.

Andrews' counterclaim alleges that she was entitled to an incentive payment of $27,000 for a specific sale of a product shipped to her territory, under the belief that the FY 2022 SIP combined with the parties' "long-term course of dealings . . . require payment for sales of Consumable or Instruments shipped to [Andrews'] territory." (ECF No. 37 at 4.) In the instant Motion, Andrews argues RFP No. 38 is relevant to show that only she received incentive payments for shipments to her territory from 2019 through 2022. (ECF No. 37 at 4–5.) Additionally, Andrews theorizes that evidence of no employee receiving incentive payments for sales shipped to Andrews' territory would support her theory that Plaintiff was unjustly enriched by not paying incentive awards as required. (*Id.*) Finally, Andrews concludes, without explanation or analysis, that the information sought would be directly relevant to Plaintiff's third (acting in good faith and with good cause), seventh (legitimate business reasons and good cause), and eighth affirmative defenses (satisfaction of duties owed). (*Id.* at 5–6.)

The Court does not find persuasive Andrews' conclusion that the information captured by RFP No. 38 would have any bearing on Plaintiff's affirmative defenses as Andrews fails to provide any analysis or explanation to that end. Nonetheless, the Court is persuaded that, under Andrews' theory, evidence demonstrating that only Andrews was paid for sales shipped to her territory is relevant because it could support that the contract

should be interpreted as Andrews asserts. Further, the Court finds that evidence that no employee received the $27,000 incentive award for the specific sale at issue would be relevant to Andrews' counterclaim.

However, as Plaintiff notes (*see* ECF No. 46 at 4–5), the scope of RFP No. 38 is far broader than Andrews' theories of relevance. First, her counterclaim does not allege multiple instances of unpaid incentives. Rather, Andrews alleges that there was one order in January 2022, for which she should have received a $27,000 incentive award that Plaintiff did not pay her. (Countercl. ¶ 9.) As such, Andrews' arguments that responsive documents would show "if through house accounts or otherwise [Plaintiff] has been unjustly enriched based on sales of products shipped to Andrews'[s] territory" are not relevant to the claims or defenses of this case to the extent RFP No. 38 captures documentation of sales other than the single sale resulting in the alleged $27,000 incentive award. (*See* ECF No. 37 at 5.)

Second, Andrews does not explain how "all documents and communications" are relevant under the limited theories of relevance she asserts. Plaintiff argues that Andrews' request is "tantamount to a fishing expedition" because "[d]ocuments responsive to this request will include, but will not be limited to, proprietary Azenta sales information, private third[-]party financial information, sales incentive plan interpretations, and any and all related communications involving thousands of other sales—all irrelevant and superfluous to the sale which comprises the sole subject of Andrews'[s] pleading." (ECF No. 46 at 5.) Although some of Plaintiff's concerns could sufficiently be addressed through the protective order and a privilege log, the Court finds Andrews fails to explain how any *communications* would be relevant to the claims alleged and defenses asserted in this action, or why all documents are necessary based on the narrow theories of relevance she asserts. As such, the Court finds RFP No. 38 overbroad as written.

Accordingly, based on Andrews' counterclaims, Plaintiff's defenses, and the theories of relevance Andrews has asserted in the instant Motion, the Court finds RFP No. 38 relevant only to the extent that it captures documents sufficient to evidence any and

all incentive awards paid to Plaintiff's employees, excluding Andrews, based on or related to the shipping of any product during the period from April 30, 2019, to April 15, 2022, to buyers in Andrews' territory.

### B.     Proportionality

Plaintiff argues that Andrews' request is disproportionate and unduly burdensome because reviewing and producing "three years' worth of documents and communications for the entire organization . . . would in all likelihood exceed the $27,000 unpaid incentive payment itself." (ECF No. 46 at 5.) In response, Andrews only argues that because the documents would be "highly relevant," the cost of their production is proportional to the needs of the case. (ECF No. 50 at 6.)

"The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment; *see also Scherer v. FCA US, LLC*, 538 F. Supp. 3d 1002, 1006 (S.D. Cal. 2021) ("The inquiry to be conducted under the proportionality requirement . . . requires input from both sides."). Although "[the] party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination," the propounding party "should be able to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment; *see also Lopez v. United States*, No. 15-CV-180-JAH-WVG, 2017 WL 1062581, at *5 (S.D. Cal. Mar. 21, 2017) ("Although there are conflicting views on which party has the burden of proving proportionality, this Court believes the better approach is that both parties share the responsibility of explaining their positions regarding the proportionality factors.") (internal citation omitted). It is "[t]he court's responsibility, using all the information provided by the parties, [] to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 565 (D. Ariz. 2016) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment).

As revised, the Court finds RFP No. 38 to be proportional.  Because the Court has found Andrews is only entitled to "documents sufficient to evidence" payment of incentive awards, Plaintiff's concerns regarding the cost of reviewing all documents and communications have been mitigated.  Further, as Plaintiff has already produced records of Andrews' department incentive payouts for the first three quarters of the 2022 fiscal year, (*see* ECF No. 46 at 3–4, 6), the Court finds that production of ten additional quarters worth of responsive data would not be unduly burdensome.

## IV.    CONCLUSION

For the reasons stated above, Andrews' Motion to Compel (ECF No. 37) is **GRANTED in part** as to the Court's modified version of RFP No. 38.  Accordingly, to the extent it has not already done so, Plaintiff shall produce:

> ~~All~~ DOCUMENTS ~~and COMMUNICATIONS~~ **sufficient to evidence** ~~evidencing, reflecting, or relating to~~ any **and all** ~~commissions or~~ **incentive** awards paid to any AZENTA employee other than ANDREWS based on or related to the shipping ~~and invoicing~~ of any product during the period from April 30, 2019**,** to April 15, 2022**,** to a buyer in ANDREWS' territory.

Plaintiff shall comply with this Order and produce responsive discovery within fourteen (14) days of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated:  November 13, 2023

_____
Hon. Jill L. Burkhardt
United States Magistrate Judge