UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AZENTA, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>STEPHANIE ANDREWS, et al.,<br><br>                    Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No.: 22-cv-01952-JLS-JLB<br><br>**ORDER REGARDING PLAINTIFF AZENTA, INC.'S MOTIONS TO COMPEL**<br><br>**[ECF Nos. 38, 43]** |

Before the Court are two Motions to Compel filed by Plaintiff Azenta, Inc. ("Plaintiff"), seeking to compel a forensic examination of the computers and cloud-based storage systems of Defendant Stephanie Andrews ("Andrews") and Defendant LVL Technologies USA, Inc. ("LVL"), (collectively "Defendants").[1]  (ECF Nos. 38; 43.)

---

[1]  On October 18, 2023, after the instant motions were fully briefed as to both Defendants, LVL filed a notification of bankruptcy, alerting this court it had filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida.  (ECF No. 58.)  In light of the automatic stay imposed by 11 U.S.C. § 362, both motions are **DENIED without prejudice**

1

Defendants filed an opposition (ECF No. 45), to which Plaintiff replied (ECF No. 52). For the reasons stated below, Plaintiff's second Motion to Compel (ECF No. 43) is **GRANTED in part and DENIED without prejudice in part** as to Andrews and Plaintiff's first Motion to Compel (ECF No. 38) is **DENIED as moot**.[2]

## I.   BACKGROUND

### A.   The Underlying Action

Plaintiff, a life science company, employed Andrews starting on or around October 1, 2015. (ECF Nos. 1 ("Compl.") ¶ 2.) Throughout her tenure with Plaintiff, Andrews was initially a Regional Manager of Sales and then a Senior Account Manager. (ECF No. 43 at 4.) On April 1, 2022, Andrews tendered her resignation, and her last day of employment with Plaintiff was April 15, 2022. (Compl. ¶ 4.) During Andrews' exit interview, Plaintiff reminded Andrews she was contractually obligated to return any items issued by Plaintiff, including laptops.[3] (ECF No. 43 at 5.) Four days later, LVL—a direct competitor of Plaintiff—announced it had hired Andrews. (Compl. ¶ 34.)

Upon Andrews' termination, Plaintiff conducted an examination of its computer systems, which revealed that Andrews had (1) virtually met with LVL personnel at least five times and (2) downloaded and sent Plaintiff's proprietary customer and billing information from her work email address to her personal email address at least five times. (ECF No. 43 at 4–5.) Further, Plaintiff had not received Andrews' work laptops, including

---

as to LVL. Accordingly, the Court's analysis focuses solely on the motions as they pertain to Andrews.

[2]   The Court notes that Defendant attached to her opposition evidentiary objections to certain paragraphs of the Omnibus Declaration of Mark Romeo. (*See* ECF No. 45-5.) The Court declines to rule on these objections as the Court does not rely on this evidence in reaching its decisions as to the instant motions.

[3]   According to Plaintiff's Information Services Manager, Andrews was issued three laptops: "one last used in 2017 bearing Dell Service Tag GSTS7R1, one last used in 2019 bearing Dell Service Tag 6Q0YGH2, and one last used in April 2022 bearing Dell Service Tag 993GZM2" ("DST 993GZM2"). (ECF No. 43-3 at 1–2 ("Morales Decl.") ¶¶ 1, 3.)

DST 993GZM2, which Plaintiff alleges Andrews used to misappropriate trade secrets. (ECF Nos. 43 at 5; Morales Decl. ¶ 5.) Plaintiff prompted Andrews by email to return the laptops on May 22, 2022, June 1, 2022, and June 10, 2022. (ECF No. 43 at 5.) Andrews did not respond to the first two emails; however, in August 2022, Andrews returned "miscellaneous Azenta-issued items, including a laptop with a cracked screen, . . . that had not been used in at least two years." (ECF Nos. 43 at 5; Morales Decl. ¶ 4.) On September 30, 2022, Plaintiff sent Andrews another email, to which Andrews did not respond. (ECF No. 43 at 5.)

On December 9, 2022, Plaintiff filed its complaint alleging, *inter alia*, that Andrews' actions violated the Defend Trade Secrets Act of 2016. (*See generally* Compl.)

Months later, Andrews asserted that she had returned DST 993GZM2 to Plaintiff's FedEx account 100300303. (ECF No. 43 at 6.) Plaintiff generated a report from FedEx of all shipments in the month of April 2022 to account 100300303 and cross referenced it against Plaintiff's records; however, no shipments listed Andrews as the sender or reflected the dimensions of a laptop. (ECF Nos. 43 at 6; 43-2 at 1–7 ("Poole Decl.") ¶¶ 5–6.) Plaintiff conveyed the findings of the report to Andrews, who then identified another account. (ECF No. 43 at 6; 43-1 ¶ 4.) Plaintiff then generated the same FedEx report for the second account Andrews identified and cross referenced it against Plaintiff's records. (ECF No. 43 at 6; Poole Decl. ¶¶ 7–8.) Again, no records listed Andrews as the sender or reflected the dimensions of a laptop. (Poole Decl. ¶ 7.)

B.   **Parties' Discovery Dispute Over Plaintiff's RFP No. 1**

Foreseeing the potential need for a forensic examination of electronic devices and systems, the parties began meeting and conferring regarding a mutually agreeable protocol for conducting the forensic examination in January 2023; however, the parties did not come to an agreement. (ECF No. 43 at 7.)

On March 3, 2023, Plaintiff propounded RFP No. 1, Set One, to Andrews. (ECF Nos. 43 at 6; 38-3 at 11.) Andrews responded on May 1, 2023. (ECF Nos. 43 at 6; 38-3 at 7–25.) The request at issue and response thereto are as follows:

3

22-cv-01952-JLS-JLB

**Request For Production No. 1:** Produce for inspection all electronic devices YOU used to access, store, transfer, copy, download, upload, or delete PLAINTIFF's documents or information, including devices used to access PLAINTIFF's documents or information stored on any email or file sharing services such as Slack, Dropbox, Microsoft Outlook, Google Drive, Google Documents, Hotmail, iCloud, or Gmail.

**Andrews' Response**: Andrews objects to this request on the grounds this request seeks information and documents not relevant to any claim or defense and it is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Andrews further objects to the production of electronically stored information [("ESI")] on the grounds that such information is not reasonably accessible because of undue burden or cost. Andrews also objects to this request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney-work product protection, the right to privacy, and documents that are confidential and/or trade secret. Andrews objects on the grounds this request is oppressive and burdensome and overbroad. Andrews further objects on the grounds that this request is not specific and does not describe the requested documents with reasonable particularity. Andrews also objects to this request on the grounds that the terms "PLAINTIFF," "PLAINTIFF's documents or information," and "devices" are vague and ambiguous. Subject to and without waiving these objections and Preliminary Statement and General Objections, Andrews responds as follows: Andrews will produce any responsive devices for forensic inspection pursuant to a Forensic Inspection Protocol approved by the Court. Documents subject to the attorney-client privilege, work product protection, the right to privacy, or any other privilege, if any, that are being withheld will be identified on a privilege log[.]

(ECF No. 38-3 at 11–13.)

The Court held an informal discovery conference on September 20, 2023 (ECF No. 35), after which a briefing schedule was issued (ECF No. 36).

**C.      Andrews' Forensic Examination of Her Devices and Systems**

Defendants' counsel engaged Epiq eDiscovery Solutions, Inc. ("Epiq") to obtain and analyze forensic images of certain data sources from Andrews, including a Lenova laptop

issued to Andrews by LVL,[4] Andrews' personal Apple laptop, three USB devices, Andrews' personal email account, and the iCloud backup of Andrews' Apple ID relating to an Apple iPhone. (ECF Nos. 45-3 at 1–5 ("Massoud Decl.") ¶ 6; 45-4 at 1–10 ("Folan Decl.") ¶ 2.) On June 6, 2023, Defendants provided Epiq with the list of search terms that Plaintiff had proposed on March 29, 2023. (Folan Decl. ¶ 3.) Plaintiff had requested that Defendants allow "a neutral third party to monitor [Epiq's] investigation" in order to "determine whether or not the search was full and complete." (ECF No. 43 at 3, 7.) Defendants refused. (*Id.*)

Epiq conducted a forensic analysis "to determine if [Andrews] had downloaded, accessed, emailed or otherwise distributed an Excel spreadsheet called 'Q2 Jan Feb Billings 03.24.22_EW edits—Master file.xlsx.'" (Massoud Decl. ¶ 7.) As a part of the forensic analysis, Epiq "examined LNK files, Jumplist files, and Shellbag files in an effort to determine if the file at issue . . . was accessed via the LVL Lenovo or the Apple Laptop and/or copied or moved to the aforementioned USB devices and/or emailed to other accounts."[5] (*Id.* ¶ 13 (footnote omitted).) Epiq's examination revealed no evidence that the file was accessed, opened, copied, moved, or emailed. (*Id.* ¶¶ 14, 19.) "The file existed only on two (2) data sources; namely, it is stored locally within the Email application on [Andrews' personal] Apple laptop and within [Andrews' personal] Hotmail account." (*Id.* ¶ 15.)

---

[4] Defendants note that Andrews' employment with LVL ended on August 15, 2023, she no longer has any LVL property, and LVL does not have access to any of Andrews' personal devices or personal accounts. (ECF No. 45 at 3.)

[5] A LNK file is a file extension for a shortcut that points to another executable file ("destination file"). (Massoud Decl. ¶ 13 n.1.) A LNK file can indicate when the destination file was created or last modified. (*Id.*) Further, a LNK file can indicate if a destination file previously existed, even if it has since been deleted. *See Keating v. Jastremski*, No. 15-CV-00057-L-AGS, 2020 WL 1809139, at *6 (S.D. Cal. Apr. 9, 2020). Similarly, Jumplist files indicate file activity. (Massoud Decl. ¶ 13 n.1.) Shellbag files indicate when a folder, rather than the file, was accessed. (*Id.*)

Next, Epiq "attempted to determine if the file or contents of the file were used within the LVL laptop or if the file . . . had perhaps been renamed so as to hide it from discovery." To do so, Epiq executed a keyword search across all data sources using Plaintiff's search terms as provided by Andrews. (*Id.* ¶¶ 16–17.) The search generated over 90,000 hits but reaffirmed that the file existed only within the two aforementioned data sources. (*Id.* ¶¶ 17–18.) All hits and associated files were exported and processed by Epiq, and then transferred to Relativity for review by Andrews. (*Id.*) Andrews then produced over 7,000 pages of documents responsive to Plaintiff's RFPs, based on Plaintiff's search terms. (Folan Decl. ¶ 3.)

### D. The Instant Motions and Plaintiff's Proposed Protocol

On October 2, 2023, Plaintiff filed one of the instant motions to compel a forensic examination of Defendants' devices and systems (ECF No. 38), in which Plaintiff incorrectly stated it submitted Exhibits A and B to the Omnibus Declaration of Donna Poole "via email in native format" (ECF No. 38-2 at 6–7). On October 9, 2023, Plaintiff filed its second motion to compel a forensic examination of Defendants' devices and systems, fixing the error regarding how Exhibits A and B were to be submitted to the Court. (ECF No. 43.) The Court notes that the motions, but not the attachments, are identical.[6]

Generally, Plaintiff's proposed forensic examination protocol would seek to "ensure that the search for Azenta Information is complete" by hiring "a neutral forensic expert, Dr. Shane Shook" to "oversee[]" Epiq's work. (ECF No. 38-3 at 55.) First, Defendants

---

[6] Although the motions themselves are identical, the exhibits attached thereto differ in four respects. First, the order of the exhibits is different. Second, the original motion included a proposed order in violation of the Civil Local Rules, which was excluded from the second motion. (*See* ECF Nos. 38-5; 51.) Third, in addition to addressing the lodgment error, the latter Omnibus Declaration of Donna Poole (ECF No. 43-2) changed paragraph 14 and replaced the electronic signature with a wet signature. Fourth and finally, the exhibits to the Omnibus Declaration of Mark Romeo, which include RFP No. 1, Andrews' Response to RFP No. 1, and Plaintiff's Proposed Forensic Inspection Protocol, are absent from the second motion. (*Compare* ECF No. 38-3 *with* ECF No. 43-1.)

would be required to "list all Devices and Accounts on which Azenta Information may have been stored, accessed, deleted, or transferred." (*Id.* at 56.) Epiq would then identify which of the listed devices it previously had examined. (*Id.*) Any devices or accounts not previously examined would be produced by Defendants to Epiq and Dr. Shook for imaging. (*Id.* at 56–57.) Next, Epiq would analyze the devices and accounts using Plaintiff's search terms to determine usage and deletion activity with regard to Plaintiff's confidential and proprietary information. (*Id.* at 57–58.) Then, Epiq would prepare a forensic report in consultation with Dr. Shook answering detailed questions about usage and deletion activity. (*Id.* at 58.) The report and ESI identified in the report would then be provided to Defendants' to be reviewed for privileged and "purely private information." (*Id.* at 58–59.) Finally, Defendants would produce to Plaintiff the report and ESI identified in the report, minus anything appropriately withheld, and Epiq would remove any of Plaintiff's information from the examined devices and accounts prior to returning them to Andrews. (*Id.* at 59–61.)

## II. LEGAL STANDARD

A party is entitled to seek discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.* Rule 34 further provides that a party may serve requests for documents, ESI, or tangible things on any other party within the scope of discovery defined in Rule 26(b).[7] Fed. R. Civ. P. 34(a). If a party fails to produce documents

---

[7]   All references to Rule or Rules are to the Federal Rules of Civil Procedure unless otherwise stated.

pursuant to Rule 34, the propounding party may bring a motion to compel. *See* Fed. R. Civ. P. 37(a).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." *Alves v. Riverside Cnty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021) (quoting *Bryant v. Ochoa*, No. 07-CV-00200-JM-PCL, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009)). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). "Once the propounding party establishes that the request seeks relevant information, '[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 283 (S.D. Cal. 2018) (quoting *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009). However, the Court must—either on motion or *sua sponte*—"limit the frequency or extent" of otherwise permissible discovery if the Court finds the request "unreasonably cumulative or duplicative" or the discovery sought is obtainable from a "more convenient, less burdensome, or less expensive" source. Fed. R. Civ. P. 26(b)(2)(C)(i).

## III.  DISCUSSION

Generally, Plaintiff seeks a forensic examination of Andrews' devices and cloud-based storage systems to determine "what of its information was taken by [Andrews], and what was done with it, so that Azenta's property may be returned." (ECF No. 43 at 3.) As Defendants conducted a forensic examination independently without shared protocol, without an additional observer hired by Plaintiff, and without providing to Plaintiff a list of the devices and systems examined, Plaintiff also seeks to verify that the forensic examination conducted by Defendants was complete. (*Id.* at 7.)

Andrews argues that there is "no legitimate reason to allow Azenta or anyone acting on behalf of Azenta to have access to Andrews' personal electronic accounts and devices" considering that "a forensic examination of the relevant devices and accounts already has

been performed." (ECF No. 45 at 4.)  Rather, Andrews suggests that Plaintiff should depose both the forensic examiner, Ashraf Massoud, to test the veracity of his qualifications, methodology, and findings, and Andrews.  (*Id.* at 7–8, 9.)

### A. The Rule 26(b) Discovery Standard Applies to Forensic Examinations.

Pursuant to Rule 34, a party may seek forensic imaging of electronic devices that fall within the scope of Rule 26(b).  Fed. R. Civ. P. 34(a)(1) ("A party may serve on any other party a request . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . electronically stored information . . . or any designated tangible things.").  However, "[i]nspection or testing of certain types of electronically stored information of a responding party's electronic information system may raise issues of confidentiality or privacy," so courts are cautioned to "guard against undue intrusiveness resulting from inspecting or testing such systems."  Fed. R. Civ. P. 34(a)(1) advisory committee's notes to 2006 amendment.  Further, "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost" unless "the requesting party shows good cause," subject to the mandatory proportionality limitations set forth in Rule 26(b)(2)(C).  Fed. R. Civ. P. 26(b)(2)(B).

Andrews asserts that "[m]ere suspicion or speculation that an opposing party may be withholding discoverable information is insufficient to support a forensic examination and[,] absent specific, concrete evidence of concealment or destruction of evidence[,] courts are generally cautious about granting a request for a forensic examination of an adversary's computer."  (ECF No. 45 at 7–8 (citing J*uul Labs, Inc. v. Chou*, No. 2:21-CV-03056-DSF-PDX, 2022 WL 2161062, at *2 (C.D. Cal. Apr. 19, 2022); *Moser v. Health Ins. Innovations, Inc.*, No. 17-CV-1127-WQH-KSC, 2018 WL 6735710, at *5 (S.D. Cal. Dec. 21, 2018), *objections overruled*, No. 17-CV-1127-WQH-KSC, 2019 WL 13391059 (S.D. Cal. Apr. 12, 2019); and *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, No. 12-CV-2472-AJB-KSC, 2013 WL 5212013 at *2 (S.D. Cal. 2013).

To the extent Andrews is suggesting that the standard for discovery set forth by Rule 26 is applied differently or is heightened in the context of a forensic examination, the Court rejects Andrews' stance. Due to the intrusive and costly nature of a forensic examination, such a request raises significant concerns regarding proportionality and confidentiality—as noted in Rule 26(b) and the accompanying advisory committee note to the 2006 amendment; however, the standard itself does not change. *See Philips N. Am. LLC v. Advanced Imaging Servs.*, No. 2:21-CV-00876 DAD AC, 2023 WL 316916, at *2 (E.D. Cal. Jan. 19, 2023) ("The court disagrees with [the] defendant that a heightened standard categorically applies to all compelled computer forensics. While it is certainly true that concerns of proportionality and confidentiality are heightened in this context, as the cases reflect, the standard governing discovery does not vary."). Where the burden or expense is significant—such is often the case when considering a request for forensic examination—the propounding party must demonstrate that the likely benefit is all the more acute so as not to be outweighed by the burden. *See* Fed. R. Civ. P. 26(b)(1).

### B. A Forensic Examination of Andrews' Devices and Systems Is Relevant to Plaintiff's Trade Secret Misappropriation Claim.

Although Andrews's Response to RFP No. 1 objected, *inter alia*, on the grounds that the request sought "information and documents not relevant to any claim or defense," Andrews did not expressly reassert a relevance objection within her opposition brief to the instant motions.[8] *See Hall v. Marriott Int'l, Inc.*, No. 19-cv-01715-JLS-AHG, 2021 WL 1906464, at *9 (S.D. Cal. May 12, 2021) (quoting *SolarCity Corp. v. Doria*, No. 16-cv-3085-JAH-RBB, 2018 WL 467898, at *3 (S.D. Cal. Jan. 18, 2018)) ("When ruling on a motion to compel, courts in this district 'generally consider[ ] only those objections that have been timely asserted in the initial response to the discovery request and that are

---

[8]   Andrews did copy the entirety of her Response to RFP No. 1, without further elucidation, for the purpose of demonstrating that she, and not only LVL, objected to RFP No. 1. (*See* ECF No. 45 at 5–6.)

subsequently reasserted and relied upon in response to the motion to compel.'"); *Sherwin-Williams Co. v. Earl Scheib of Cal., Inc.*, No. 12-cv-2646-JAH-JMA, 2013 WL 12073836, at *2, n.1 (S.D. Cal. Mar. 4, 2013) (deeming all objections raised in response to the discovery requests but not addressed in the discovery motion to be moot or waived, and limiting its review to arguments presented in the parties' briefs).

Moreover, even if Andrews reasserted her relevance objection, the Court finds generally that devices and systems used to "access, store, transfer, copy, download, upload, or delete Plaintiff's documents or information" would be relevant to Plaintiff's trade secret misappropriation claim. (*See* ECF No. ECF No. 38-3 at 11.)  However, Andrews notes that Plaintiff's search terms included the names of Andrews' son and husband, "neither one of [whom] has anything to do with this lawsuit." (ECF No. 45 at 4.)  In response, Plaintiff asserts that, had it known the identity of those individuals, "those names would not have been included with the proposed search terms."[9] (ECF No. 52 at 4.)  In light of Andrew's objection and Plaintiff's concession, the Court deems the inclusion of the two family member names as search terms unlikely to yield relevant information.  Other than that, Andrews' relevance objection is overruled.

Having found RFP No. 1 relevant, with the exclusion of the two aforementioned search terms, the Court turns to the proportionality of the request.

### B. The Burden of a Supplemental Forensic Inspection Under Plaintiff's Proposed Protocol Substantially Outweighs Its Likely Benefit.

Andrews argues that the protocol proposed by Plaintiff is "overly broad," "not proportionate to the needs of the case," and "does not afford Andrews . . . the necessary protection to ensure private and personal information is not accessed . . . ." (ECF No. 45

---

[9] Although the parties assured the Court that they sufficiently met and conferred on this discovery dispute prior to raising it with the Court, the clear lack of communication regarding potential search terms calls into question the adequacy of the parties' informal efforts.

at 8.) Specifically, Epiq's forensic examination, using Plaintiff's 52 search terms, resulted in over 90,000 hits, cost over $20,000 for Epiq's services alone, required more than 60 subsequent hours by counsel to prepare, review and produce responsive documents, and resulted in production of over 7,000 pages of responsive documents.[10] (*Id.*; Folan Decl. ¶ 4; Massoud Decl. ¶ 17.) Additionally, Andrews argues the scope of the examination would be "highly disruptive . . . to Andrews for a second time." (ECF No. 45 at 9.) Finally, Andrews argues that there is no evidence the forensic examination and related document production was flawed, incomplete, or otherwise questionable. (*Id.* at 7, 9.)

In contrast, Plaintiff points to the missing laptop Andrews alleges she returned, her changing story regarding which FedEx account she used to return the laptop—neither of which was corroborated by Plaintiff's or FedEx's records—and Andrews' unwillingness to work with Plaintiff to reach an agreement on a forensic protocol as calling into question Defendants' credibility and, thus, the reliability of the forensic examination Defendants paid Epiq to complete. (ECF Nos. 43 at 2–3, 8–10; 52 at 2–5.) Further, Plaintiff argues that its proposed protocol sufficiently minimizes burden because there is a protective order already in place, and the protocol "provides for a first look by Defendants' counsel [at the responsive ESI] and Azenta to bear the cost of the examination." (ECF No. 43 at 2, 11.)

Plaintiff analogizes the instant case to that of *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, No. 10-cv-03428-LHK, 2012 WL 70428 (N.D. Cal. Jan. 9, 2012). Although both cases involve misappropriation of trade secrets by former employees and missing devices, the circumstance of the cases are quite different. In *Brocade*, the Rule 30(b)(6) witness from A10 Networks, Inc. admitted in a deposition that one of the

---

[10] Ostensibly alluding to burden, Andrews notes that Plaintiff's proposed search terms were "not limited to five custodians as set forth in the Southern District's Model Order Governing ESI . . . ." (ECF No. 45 at 5; Folan Decl. ¶ 3.) However, this district does not have a Model Order Governing ESI. The district previously had approved a Model Order for ESI in *patent* cases which limited ESI production requests to a total of *ten* custodians, but Patent Local Rule 2.6 was removed by General Order No. 727 on March 2, 2020.

plaintiff's former employees took a hard drive with 196 of the plaintiff's source code files on it and that the hard drive was then imaged before being "recycled," but the deponent could not or would not explain what recycled meant. 2012 WL 70428, at *2. Subsequently, the deponent admitted that the plaintiff's files had been transferred from the imaged hard drive to the employee's current computer issued by the defendant. *Id.*

These factual differences greatly impact the likely benefit to the moving party of any forensic examination. First, under the circumstances set forth in *Brocade*, forensically examining the hard drives in the possession of the defendant's employee would have the likely benefit of locating the missing hard drive and of determining what actions, if any, the defendant and its employee had taken with regard the 196 misappropriated files. Here, Plaintiff does not allege that conducting a second forensic examination of the responsive devices and computer systems would determine the current location of or reveal Andrews' actions whilst using the missing laptop. Second, the hard drives in *Brocade*—including the one identified by the defendant as having the 196 transferred files—had not yet been forensically examined at all, as the court had previously denied the plaintiff's request. *Brocade*, 2012 WL 70428, at *1. Here, Plaintiff is advocating for a second or supplemental forensic inspection. As such, the likely benefit the court considered under the facts of *Brocade* does not exist—at least not to the same degree—in the instant case.

Further, upon reviewing the defendant's deposition transcript, the court in *Brocade* found that, due to the deponent's "inability and/or unwillingness to provide" information regarding what "recycled" meant, a forensic examination was the plaintiff's only avenue for discovering the information it sought. 2012 WL 70428, at *2. Although Plaintiff characterizes Andrews' "changing testimony" as "intentional attempts to conceal the whereabouts" and a "refusal to identify the location of the missing laptop" (ECF Nos. 43 at 8 n.1; 52 at 5), Plaintiff had not yet deposed Andrews. Plaintiff could depose Andrews on the missing laptop and her actions related thereto, and could depose Massoud on the forensic examination already conducted to test its scientific soundness, accuracy, and completeness. Unlike in *Brocade*, Plaintiff here has other, less burdensome methods of

discovery it could employ to try to access the relevant information, which lessens the need for this particular method of discovery at this stage. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

With regard to Andrews' privacy concerns, the Court agrees with Plaintiff that confidentiality would be adequately addressed by the protective order already in place. (*See* ECF No. 25.) Any experts hired to conduct a forensic examination would be required to agree in writing to be bound by the protective order prior to receiving any confidential information. (*Id.* ¶ 8.) Additionally, the ESI garnered from any forensic examination would be subject to any claims of privilege Andrews would like to assert. (*Id.* ¶ 17; ECF No. 38-3 at 59–61.)

Turning to the issue of expense, although the instant motions state that Plaintiff would bear the cost (*see* ECF No. 43 at 2, 11), this is an oversimplification and disregards the additional expense Andrews will face. The fee provision in Plaintiff's proposed protocol reads: "**Defendants shall pay for Epiq** and Azenta shall pay for the cost of Dr. Shook's time and any costs incurred by Dr. Shook to carry out the terms of this Protocol." (ECF No. 38-3 at 61 (emphasis added).) Plaintiff's proposed protocol requires forensic imaging of all devices only "[t]o the extent not already done by Epiq previously" (*id.* at 56–57), which would minimize potential expenses incurred by Epiq moving forward. However, the provisions Plaintiff sets forth for the analysis and report on the imaged devices include extensive analysis to be conducted and questions to be answered by Epiq in consultation with Plaintiff's proposed expert. (*See* ECF No. 38-3 at 57–58.) Further, the overall expense of a supplemental or second forensic examination is not limited to the cost of Epiq's services. Such an examination would also result in the additional expense of Andrews' counsel's time in conducting a review of the second forensic report and all ESI identified by the report for privilege and purely personal information prior to their production to Plaintiff.

Based on the foregoing, the Court finds that the burden of the additional costs to Andrews under Plaintiff's protocol and the time both parties' experts and counsel would expend substantially outweigh the benefit Plaintiff would likely receive, particularly

considering Plaintiff has other less burdensome methods available to it for discovering the relevant information, such as deposing Andrews and Massoud. However, the Court agrees that Plaintiff is entitled to know which devices and accounts are responsive to RFP No. 1 and which of those devices and accounts were subject to the examination by Epiq. As such, Plaintiff's second Motion to Compel (ECF No. 43) is **GRANTED in part** to the extent Andrews and her counsel shall submit to Plaintiff a declaration(s) that lists all devices and accounts on which Plaintiff's information may have been stored, accessed, deleted, or transferred. The declaration(s) shall identify the current custodian of each device and/or account. If Plaintiff discovers additional or new evidence supporting its need for a second or supplemental forensic examination, Plaintiff may re-raise the issue with the Court pursuant to Section V of the undersigned's Civil Chambers Rules. The motion is **DENIED** in all other respects.

## IV.  CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED**:

1. Plaintiff's first and second Motions to Compel (ECF Nos. 38; 43) are **DENIED without prejudice** as to LVL.

2. Plaintiff's second Motion to Compel (ECF No. 43) is **GRANTED in part and DENIED without prejudice in part** as to Andrews.

3. Within **five (5) days** of the docketing of this Order, Andrews and her counsel shall submit a declaration to Plaintiff with a list of all devices and accounts on which Plaintiff's information may have been stored, accessed, deleted, or transferred. The declaration(s) shall identify the current custodian of each device and/or account.

4. Plaintiff's first Motion to Compel (ECF No. 38) is **DENIED as moot** as to Andrews.

**IT IS SO ORDERED.**

Dated:  December 21, 2023

Hon. Jill L. Burkhardt
United States Magistrate Judge